IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

MARGIE CLARK,

       Plaintiff,

   v.

NANCY A. BERRYHILL, Acting
Commissioner, Social Security,

       Defendant.

CIVIL ACTION NO.: 5:17-cv-137

## **ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Donald B. Fishman ("the ALJ" or "ALJ Fishman") denying her claim for a Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to reverse and remand the ALJ's decision for additional medical and vocational analyses. Doc. 12 at 8. Defendant asserts the Commissioner's decision should be affirmed. Doc. 13 at 12. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on June 5, 2014, alleging that she became disabled on October 23, 2013, due to numbness, pain, and an inability to grab or lift. Doc. 10-2 at 16; Doc. 10-3 at 2. After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On December 2, 2016, ALJ Fishman conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified from Waycross, Georgia. James Waddington, a vocational

expert, also appeared at the hearing.  Doc. 10-2 at 16.  ALJ Fishman found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") since October 23, 2013.  Id.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.  Id. at 2.

Plaintiff, born on December 13, 1965, was 51 years old when ALJ Fishman issued his final decision and 47 years old on her alleged disability onset date.  Id. at 20, 21.  She has a limited education.  Id. at 20, 33  Plaintiff's past relevant work experience includes work as a convenience store clerk and material handler.  Id. at 20.

## DISCUSSION

### I.   The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id.  If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.

Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since October 23, 2013, her alleged onset date.[1]

---

[1]   The ALJ stated Plaintiff had not engaged in substantial gainful activity since June 13, 2014, the amended alleged onset date.  Doc. 10-2 at 18.  However, it appears the ALJ intended to use June 13,

3

Doc. 10-2 at 18. At step two, ALJ Fishman determined Plaintiff had a right upper extremity injury, a condition considered "severe" under the Regulations. Id. However, at the third step, the ALJ determined that Plaintiff's impairment did not meet or medically equal the severity of a listed impairment. Id. The ALJ found Plaintiff had the residual functional capacity to perform work at the light exertional level, with the following exceptions: no limitations on sitting, standing, or walking; avoid handling, fingering, and feeling with the right hand; avoid climbing ladders and scaffolds and crawling; and lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. Id. at 19, 20. At the next step, the ALJ determined Plaintiff could not perform any of her past relevant work. Id. at 20. The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of night guard, a semi-skilled job; mail clerk, an unskilled job; and information clerk, an unskilled job, all of which are jobs at the light exertional level and which exist in significant numbers in the national economy. Id. at 21.

## II.  Issues Presented

Plaintiff asserts the ALJ erred by not stating the weight he gave to medical opinions and records. Doc. 12 at 5–7. In addition, Plaintiff alleges the ALJ's hypothetical to the vocational expert is not supported by substantial evidence. Id. at 7–8.

## III.  Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for

---

2015, as the amended date of disability, which was 6 months before Plaintiff's 50th birthday. Doc. 12 at 2; Doc. 13 at 2.

that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.     Whether the ALJ Properly Considered the Medical Evidence**

Plaintiff asserts it is clear ALJ Fishman reviewed the records and opinions of Plaintiff's treating physicians and Dr. Robert Packer, a consultative examiner, but the ALJ erred by failing

5

to sufficiently define the amount of weight he gave those opinions and records. Doc. 12 at 5–6. Plaintiff notes the ALJ gave "some weight" to the opinions of the State agency physicians, but asserts it is not clear what portions of these opinions were accepted or rejected. Id. at 6–7.

Defendant alleges Plaintiff does not identify which treating physicians' opinions she contends the ALJ failed to weigh. Doc. 13 at 7. Nonetheless, Defendant notes the ALJ considered the records and opinion of Dr. Peter Murray, Plaintiff's surgeon.[2] Id. Defendant points out Dr. Murray's last assessment of Plaintiff was made 10 months before Plaintiff's alleged onset date. Id. In addition, Defendant notes there is nothing inconsistent between Dr. Murray's assessment (functioning quite well with activities of daily living, no complaints of pain, full range of motion in right arm and elbow but without grip strength on the right) and ALJ Fishman's step five finding limiting Plaintiff to jobs not requiring bimanual dexterity, grasping, or handling or fingering with the right upper extremity. Id. at 7–8. Defendant states the ALJ accurately described, assessed, and weighed Dr. Packer's findings, including Dr. Packer's opinion that Plaintiff had right arm weakness and numbness, decrease in grip strength, an inability to push or pull with her right arm and hand, and could not perform any activities of daily living with her right hand but had full strength in her left upper extremity. Id. at 8, 9. Defendant also states ALJ Fishman clearly explained what the State agency consultants opined Plaintiff could do and specifically found he gave the consultants' opinions some weight. Defendant notes the ALJ made a more restrictive finding than the State agency consultants did regarding activities requiring Plaintiff to use her right hand. Id. at 8–9 .

---

[2] In her reply brief, the only treating physician Plaintiff identifies is Dr. Murray. Doc. 14 at 1. Thus, as to treating physicians, it appears that Plaintiff is only addressing the amount of weight the ALJ gave to Dr. Murray's opinion.

In her Reply, Plaintiff maintains there is "a paucity of medical evidence regarding the specific limitations" of her right arm and hand. Doc. 14 at 1. Plaintiff asserts the only opinions the ALJ considered in evaluating her right arm and hand limitations are Dr. Packer's, who evaluated Plaintiff once, and the State agency consultants who only reviewed Plaintiff's medical records. Id.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2)). A residual functioning capacity assessment must always consider and address medical source opinions. If the residual functioning capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. Social Security Ruling 96-8p. "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007). The final determination of a plaintiff's residual functioning capacity is reserved to the Commissioner. 20 C.F.R. § 404.1527(d), (e)(2).

In determining Plaintiff has the residual functional capacity to perform work at the light exertional level with limitations, ALJ Fishman noted Plaintiff had repetitive use injury which ended in unsuccessful surgery and observed Plaintiff's allegation that she had little to no use of her right upper extremity; however, the ALJ found Plaintiff is ambidextrous and could use her left hand for all activities. Doc. 10-2 at 19. Thus, ALJ Fishman concluded Plaintiff's medically

7

determinable impairment could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record.

Specifically, the ALJ noted Dr. Packer's consultative examination, in which he found Plaintiff had right arm weakness and numbness secondary to right lateral elbow extensor muscle tear and interosseous nerve injury.  Id.  Dr. Packer noted there were no records regarding Plaintiff's surgery, and he only had Plaintiff's statements regarding her discussions with Dr. Murray since her surgery.  Id. at 19–20.  ALJ Fishman stated he gave "some weight" to the assessments of the State agency consultants who found Plaintiff could: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour day; be limited in the right upper extremity; frequent climbing of stairs, ramps, ladders, ropes, and scaffolds; frequently balance, stoop, kneel, and crouch; occasionally crawl; and not do any handling, fingering, and feeling with the right upper extremity.  Id. at 20.  Instead, ALJ Fishman found Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; had no limitations on sitting, standing, or walking; should avoid handling, fingering, and feeling with the right hand; and should avoid climbing ladders and scaffolds and crawling.  Id.

Substantial evidence supports ALJ Fishman's residual functional capacity finding.  He explained the weight he gave the various medical source opinions and records with sufficient particularity and why he discounted those opinions in part.  In addition, ALJ Fishman considered Plaintiff's limitations due to her right upper extremity impairment and what she could still do despite those limitations.  ALJ Fishman did all he was required.  This enumeration of error is without merit.

**V.      Whether the Hypothetical the ALJ Presented to the Vocational Expert was Proper**

Plaintiff contends the hypothetical presented to the vocational expert required him to assume that Plaintiff's right hand could be used as a "helper," which necessarily meant she could exert some pressure with limited use of the right hand and arm.  Doc. 12 at 6.  However, Plaintiff asserts using her right hand in this manner exceeded the limitation in the hypothetical—that Plaintiff should avoid handling, fingering, and feeling with the right hand.  Id. at 8.  Plaintiff maintains the "exact terms of the hypothetical . . . are especially important in this case because," if Plaintiff's residual functional capacity were reduced to sedentary, it would satisfy Grid Rule 201.14 at age 50.  Id.

Defendant asserts the vocational expert was given a proper hypothetical that included the restriction that Plaintiff could use her right hand only as a helper.  Doc. 13 at 10.  Defendant maintains the ALJ relied on the vocational expert's testimony to conclude Plaintiff could perform the jobs of mail clerk, information clerk, and night guard and was not disabled.  Id.  Defendant asserts the ALJ's failure to use the same language he used in his decision when presenting the hypothetical to the vocational expert at the hearing was harmless error at most and had no effect on the ALJ's finding of not disabled.  Id.

At the fifth step, the ALJ must consider the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v).  "Essentially, the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled."  Phillips, 357 F.3d at 1239.  "An ALJ may determine

9

whether a claimant has the ability to adjust to other work in the national economy by either applying the grids or using a vocational expert." Mabrey v. Acting Comm'r of Soc. Sec. Admin., 724 F. App'x 726, 730 (11th Cir. 2018) (citing Phillips, 357 F.3d at 1239–40). "When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." Phillips, 357 F.3d at 1240. "In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Moore v. Astrue, 256 F. App'x 330, 332 (11th Cir. 2007) (citation omitted).

ALJ Fishman used a vocational expert to aid him in determining the extent to which Plaintiff's limitations eroded her unskilled light occupational base. Doc. 10-2 at 21. To this end, the ALJ asked the vocational expert whether jobs exist in the national economy for a hypothetical individual with Plaintiff's age, education, work experience, and residual functional capacity. Id. The vocational expert determined Plaintiff could perform work as a night guard, mail clerk, and information clerk, all of which are light exertional level jobs. Id. However, this person could not return to the past relevant work performed by Plaintiff. Id. at 42. Even though the ALJ stated the individual could only use her right hand as a helper, he clarified that by stating, "So, without any grasping ability in that hand." Id. The ALJ also asked whether any of the jobs the vocational expert identified would require bimanually dexterity, and the vocational expert stated the mail clerk job "might be difficult to perform, . . . we could probably reduce the number [of those jobs] by 30%." Id. at 43. Plaintiff's attorney clarified the vocational expert's

10

opinion. Id. at 44–45. ALJ Fishman concluded the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. Id. at 21.

The ALJ included in his hypothetical to the vocational expert the limitations he found Plaintiff to have. When ALJ Fishman used the word "helper" in referencing Plaintiff's right hand, that term was clarified, consistent with Plaintiff's limitations. Because of this, the ALJ's decision to rely on the vocational expert's testimony was not error and is supported by substantial evidence. As noted above, ALJ Fishman did not find Plaintiff had use of her right upper extremity in determining her residual functional capacity. See Carter v. Comm'r of Soc. Sec., 411 F. App'x 295, 298 (11th Cir. 2011) (finding the ALJ's hypothetical to the vocational expert "sufficiently encompassed" the claimant's limitations, and the ALJ's failure to "specifically reference" a disorder was harmless error, at most). Accordingly, this enumeration is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 11th day of March, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA